on behalf of Sylvia Uribe, the petitioner in this case, and with me at council table is Judy Rabinovitz. The question in this case is whether the statutory scope of habeas review over expedited removal orders encompasses the pure questions of law raised here. There are a few key points I'd like to stress at the outset. First, because the suspension clause requires review of the claims in this case, legal claims going to the legal validity of a removal order, serious constitutional problems would arise if there were no mechanism for review. Second, in considering this case, the court should consider the consequences of its decision and the practical consequences of the government's position both for Ms. Uribe and for other non-citizens who may find themselves in expedited removal are extreme. Ms. Uribe has lived in the United States for 22 years. She has three children who are U.S. citizens and her husband is a lawful permanent resident. She left the United States for only two days. The government chose to parole her into the country, prosecute her for a misdemeanor, and imprison her for 60 days. Kennedy, what was her status before she left the country, this country? Was she unlawful? She did not have lawful immigration status, Your Honor. Under the government's position ---- There was some mention in the facts that she entered on an immigrant visa back in 1983 or something. Did she have any visa at all? No. My understanding is that she did not have a visa. Under the government's position, absolutely no one who finds themselves in expedited removal can get review. Under the government's interpretation, the Department of Homeland Security could start arresting people and non-citizens in Iowa, anyone who's lived here for five years, for ten years, who's not a lawful permanent resident, not an asylee, and not a refugee, and they would not be able to get any review. The government could arrest any foreign student, any business visitor, and there would be absolutely no mechanism for review if the government tried to remove them without a hearing. Pardon me, Ms. Chang, but if the government were to arrest someone in Iowa who had been there for five years, in your example, they'd start removal proceedings, correct? That's how they would get them out. They're required to start removal proceedings. Because they're there, right? They're in Iowa. And when removal proceedings are started, an application could be made for cancellation of removal, right? Or asylum, or CAT, or withholding of removal, right? That's correct. And isn't any determination by the immigration judge and the Board of Immigration Appeal then reviewable by a court? That's correct if things go as they should. But if the government acted outside of its authority... I don't understand why you're telling us about hypotheticals where you claim that there will be no review when we know there will be a review. There would be a review if the government initiated removal proceedings under INA Section 240, as it should. But if the government acted outside of its authority and chose to remove someone without a hearing, there would be no review. You mean if they kidnapped them? If they removed them under expedited removal, for example. Well, but expedited removal is not applicable to somebody who's coming into the country who isn't yet admitted or present in the country? Under the expedited removal statute, the statute on its face authorizes application of expedited removal to certain persons who are inside the country who have not been admitted. But we're not dealing with that case right now, are we? No, Your Honor. Remember the case of a woman who left the United States, went to Mexico, and on return claimed falsely that she was an American citizen as a means of gaining access. She was arrested. She pleaded guilty to the charge. She spent 60 days in jail. She was held temporarily pending her removal. So let's deal with this case rather than some other cases. Tell us why that is not a proper exercise of the jurisdiction that Congress has vested in the Immigration Department. Well, two points, Your Honor. First, the Court has to consider the consequences of its interpretation. I'll return to that point. But to answer it to you. The consequences are that Uribe would be removed, as she has been, to Mexico, where she could apply for adjustment of status as married to a resident alien of the United States. Under the Supreme Court's holding in Clark v. Martinez, the Court must consider whether the – whether the interpretation of – whether an interpretation of the statute would cause serious constitutional problems, even if that's the case. What is a serious constitutional problem? There are two – there are a few potential serious constitutional problems. With respect to Ms. Uribe herself, the Supreme Court has indicated that noncitizens have always had access to Federal court review of the legal validity of their removal orders. She does have Federal – she does have access, but it's limited to the three grounds mentioned in 1252, right? She has access, but she has to have access to the full scope of review required by the suspension clause. What if – does she have right to review if she's not within the United States? Under the suspension clause, she does, Your Honor. Under? The suspension clause. But doesn't the suspension clause – doesn't the whole of the great writ of habeas corpus apply to people who are within the United States or Guantanamo Bay, which is considered to be part of the United States? Isn't the case of Eisentrager – doesn't that show that you don't have rights to habeas corpus if you're not within the United States? Ms. Uribe was physically detained inside the United States, and there's not a single case that the government can point to in which the Supreme Court held that persons who are – who are physically inside the United States, who are considered to be at the border, do not have a right under the suspension clause to habeas corpus. I think you're absolutely right about that. And furthermore, if she – during the time that she was in jail, during her 60 days, if she had been subject to some cruel and unusual punishment, she certainly would have been able to raise that claim by habeas corpus, would she not? That's correct, Your Honor. So now – and I suppose the government can answer this – what about her detention for purposes of removal changed her ability to invoke habeas corpus from the time when she was in jail, 60 days, to the time when she was being held for removal? It's our position that that didn't change her right under the suspension clause at all. And under St. Cyr, all noncitizens have always had access to review of the legal validity of their removal orders. But St. Cyr was decided in 2001. And it was decided on the basis that the references that were then made in the statute were less than direct as to whether Congress intended to remove jurisdiction under 2241 of Title 28. But that's no longer so under the Real ID Act. You're not arguing that Congress's intent to limit habeas corpus is no longer adequately expressed, are you? We are arguing that with respect to the expedited removal statute, the provisions for review of expedited removal orders, Congress has not unequivocally expressed its intent to limit, to limit the scope of review, the scope of review past what's allowed by the suspension clause. At the beginning of 1225B, which is expedited removal, it says, notwithstanding any other provision of law, and this is the language of the Real ID Act of 2005, statutory or nonstatutory, including Section 2241 of Title 28 or any other habeas corpus provision in Section 1361, 1651 of such title. So, I mean, isn't that pretty  clear? Congress may not have the power to suspend habeas corpus in this case. That's the next issue. But whether or not it intended to, I don't think St. Cyr helps you any longer because the statute's been changed. Well, the precise statutory reading that the Court reached in St. Cyr doesn't address the particular statutory issues here. The provision that you pointed to, Your Honor, it withdraws jurisdiction over most decisions involving expedited removal. But the question in this case is, in 1252E, where Congress did specifically provide for habeas jurisdiction over expedited removal orders, whether the scope of the review that Congress provided for encompasses pure questions of law. And it's our position that Congress has not unequivocally ---- 1252B, the only talks about pure questions of law and constitutional claims in petitions for review. That's a totally different thing from a writ of habeas corpus, isn't it? That's correct. The petition for review avenue is an independent separate avenue. Right. And you're not here with a petition for review because Mrs. Arrive could have started a cancellation of removal proceeding very easily during those 22 years after she'd gotten her 10 years of residency or 7 years or whatever she had to get to, depending on the statute. But she didn't. She kept hiding out. And if she started a petition for review, she would come under 1252D. But she didn't. Now the question is, is she entitled to habeas corpus review? That is the question, Your Honor. And you point out there are no cases that say that executive detention, even for the custody is a word that's used under 2241, is ---- does not give a person a right for habeas review. This person falls somewhere in between Rasul in Guantanamo and Eisentrager in Germany, right? This ---- it's my position that this person, that Mrs. Arrive's situation is easier than those cases because she's physically here. She was physically in the United States even though she was not admitted and she was being held temporarily for purposes not of detention but of deportation, but of removal. That's correct. And under the Supreme Court's decision in St. Cyr, the Supreme Court never made any distinction between noncitizens who are at the border and noncitizens who are inside the country. Under its detailed historical analysis, it reviewed the history of immigration review in this country and it relied on several cases involving noncitizens at the border seeking entry who were challenging by habeas the validity of their exclusion orders. Is it your position that once your client was detained at the border, that she had no other redress except through habeas corpus? Was there any other kind of petition she could have filed? I don't ---- I think it would be difficult to interpret the immigration statute to allow for any other avenue of review here. It's ---- there's no doubt that Congress intended that there be habeas review of expedited removal orders. You don't think she had any other recourse except this then? I don't believe so. That is our position, Your Honor. In St. Cyr, the Court also reaffirmed the significance of the Hecula v. Barber decision, which confirms that even during those times in which the only review available was the constitutional minimum, courts in case after case, including the Supreme Court and including this Court, reviewed the habeas claims of noncitizens excluded at the border. Can you give me some examples that were used in St. Cyr of cases of aliens excluded at the border who used habeas corpus to afford review? You're asking for examples of those cases? I mean, I don't remember any, so maybe you can help me. In St. Cyr, the Court relied on the Nishimura-Akiu case, which is a case involving a Japanese immigrant excluded at the border. And in that case, the Supreme Court emphasized that an alien who is prevented from landing is doubtless entitled to the writ of habeas corpus to challenge the lawfulness of her exclusion. There's also the Jung Ah Lung case, which is cited in St. Cyr. It's also a case involving a noncitizen excluded at the border. Other cases cited in St. Cyr are Fong, sorry, Akiu. Oh, the Ji Jiao case, which was a case involving Russian immigrants who were excluded at the border. Ji Jiao, Chen Yao, and Jung Ah Lung are all cases cited in St. Cyr involving noncitizens at the border. What's your best case from a circuit court since the time of St. Cyr that supports your position, or is there one? A circuit court decision at the time of St. Cyr in 2001? Well, no, after St. Cyr and after the advent of the new legislation. Is there one? I don't believe there's a circuit court decision that we can point to as supporting our position that deals with this particular issue. Another critical reason why this Court should read the statute to allow for review is that, as I explained earlier, expedited removal applies by its terms to certain persons inside the United States. And although the government relies heavily on a purported distinction between noncitizens at the border and those inside the United States, the statute makes no differentiation between those two categories. So under Clark v. Martinez and this Court's holding in Maderaja v. Gonzalez, the Court must reach one interpretation of the statute, a unitary interpretation of the statute that would allow for review to avoid those constitutional problems. The same words can't be given two different meanings for two different categories of noncitizens. And critically, we believe that the statute in this case can be read to allow for review. Judge Hawkins found in his dissent in Lee v. Eddy and the American Arab Anti-Discrimination Committee Court found in that case that the statute does not clearly preclude review of legal claims. In 1252e5, which explains the scope of review, there are ambiguities in that provision which we discussed in our briefs. And in light of those ambiguities and in light of the serious constitutional problems that would result, we think the Court can read the statute to allow for the degree of review required by the suspension clause. But if the Court concludes that that's not possible and the Court should the Court has no choice but to strike the statute down, the specific provision that the Court finds to be the impediment to habeas review, the Court should strike that provision down. But we believe the statute can be read. And under St. Cyr, we need to look very carefully at the language of the statute to see if there's any possible way to allow for review. And if the Court doesn't have any other questions at this time, I'd like to reserve my remaining time for rebuttal. Thank you. Wendland, Jr. Good morning, Your Honors. May it please the Court, my name is Linda Wendland, and I represent the Respondents at Belize in this habeas appeal. And I would like to start off by just answering the question that I believe Judge Bea may have directed to me while my esteemed colleague was arguing, and that is whether there is indeed some kind of habeas corpus jurisdiction that Ms. Uribe Reyna, pardon me, if I get the pronunciation wrong, will be able to avail herself of or was able to avail herself of. And the government does not dispute that there is habeas corpus review available. She, at the time of the filing of her habeas petition, was in custody, and that's how habeas jurisdiction is determined. Whether custody exists as of the time of the filing is the determinative factor. So she does get some habeas review. The question is, what kind of habeas review does she get? And Section 242e2 of the Immigration and Nationality Act does provide habeas review for aliens who are detained for purposes of expedited removal, but it specifically limits that kind of review. It delineates a precise scope of review, and the specific claims that Ms. Uribe Reyna seeks to bring simply does not fall within the statutory scope of review. So there is habeas review, but Congress has specifically limited it. Are you really saying, though, that on behalf of the United States, that if someone is detained in violation of law under these circumstances, in clear violation of law, that there is no habeas review of that claim? No, Your Honor, because if a person claims to be a citizen of the United States who has been wrongly accused of being not a citizen, and or has a claim of being a lawful permanent resident of the United States, or ---- I'm talking about things that aren't covered specifically under the statute. If there is a circumstance in which someone is picked up in violation of law, is detained in violation of law, and it's not covered by the statute, are you really saying that there's no habeas review? Your Honor, you're referring to a situation where somebody is picked up for expedited removal in blatant violation? Well, sure. Let's take the example of Iowa. That's where we started off with, where someone should have been removed, subject to removal, notice of removal, but in fact was placed in expedited removal proceedings wrongfully, in violation of the statute. Are you saying that there is no habeas review of that determination? Well, Your Honor, I will answer your question, and I believe the answer is there's no review unless it comes within the specific scope of 242E2, addressing questions such as citizenship, lawful resident status, or aliens previously admitted as refugees or asylees. But I would hasten to add that you don't have to address that question here. That's a hypothetical that is not involved in this case. Well, in this case, she has alleged violations of law. So at least within the four corners of the complaint that do not fit these categories. She claims that she was detained in violation of law. She does not dispute, Your Honor, that she is an alien with no lawful status in the United States. Under the traditional scope of habeas corpus, as it existed in 1789, where the custodian, if this was executive detention, had to show that there was some basis in law, at least some basis in law for the detention. There's no question here that there is some basis in law for the detention, because the Petitioner was an alien with no lawful status in the United States and, therefore, immigration authorities had the power and the authority to remove her. She is simply complaining about the means that were used to remove her. But she cannot deny that being an alien who entered the country illegally in 1984, according to her complaint, and who was here for 22 years and who had opportunities to obtain legal status for herself and did not. Excuse me. Where is that in the record? We have the complaint. We have the TRO. We have the order dissolving the TRO. This was never litigated fully in the district court, was it? Your Honors, we will assume that you're saying is she could have done this, she could have done that, she could have done this. But the district court didn't find that. The district court didn't consider the record. This case was never litigated in the district court. It was summarily dismissed, right? It was summarily decided. That's true, Your Honor. But the point is that there was no hearing in the district court, no briefing by the Petitioner of the district court, right? Well, she would have to say. Excuse me. Is there a yes or no to that? There was briefing in the district court on the TRO, yes, Your Honor, but that was all. That was it. And no briefing on the dissolving of the TRO? No briefing. No hearing on the dissolving of the TRO? No final judgment on the merits of her claim? Just the dismissal? There was a final judgment. Oh, there was a final judgment of dismissal, yes. Yes. Not a judgment on the merits because the court determined it lacked jurisdiction and couldn't reach the merits. My only point is, let's be careful, then, about saying all of these things that perhaps one can infer from the record but, in fact, aren't in the record of the case. You're saying she could have done this, she could have done that. She admits this, she admits that. But these claims weren't litigated fully in the district court. Well, she would at least have to allege them, Your Honor, and she does not – she has pretty much conceded that she was in the country illegally for 22 years. She had an approved visa petition filed by her husband. That's – that would have been her basis for seeking to adjust her status. But I believe it's stated in the record that she did not follow up on that approved visa petition by filing an actual application for adjustment. I believe that is conceded in the record, Your Honor, so there's no need to litigate matters that have been conceded. And according to State Department visa bulletins, she would have had a visa available as somebody married to a lawful permanent resident as of sometime in mid-1999, so she could have 7-1⁄2 years before her removal proceedings sought to adjust her status, but she admits she did not follow up on that. I understand your argument. But she didn't have an opportunity to address your argument in the district court, right? The district court didn't rule on any of these things, right? She could have raised the matter in her TRO papers. She could have raised the matter in her briefs before this Court if she thought it was an important fact. But in fact, the record shows that she has conceded, I believe she conceded when she was interviewed by the immigration officers, that she did not follow up on the approved visa petition, and the way to follow up on the visa petition would have been to submit an application for adjustment of status. And there is absolutely no allegation in this case that an adjustment of status application was ever submitted in mid-1999 when she would have been eligible to do that or at any time thereafter. Not even an allegation. Justice Alito had a question. Yes, sir. I was just going to say, under your position, did she have any recourse at all once she was detained at the border? I mean, you're saying she couldn't file the writ, so was there any alternative relief she could have sought? Or is she just out of luck? Well, she did resort to the only form of relief which was available, and that was to file a petition for a writ of habeas corpus. But her problem was that she didn't meet one of the requirements. She didn't meet one of these three criteria. So then what's left? I think she's just out of luck. Well, I'm afraid that's what Congress had in mind when it enacted the statute, Your Honor, that aliens would be able to file petitions for a writ of habeas corpus, but that the review would be limited to certain specified narrow issues, and otherwise there would be no review and the alien would be promptly removed. That's why they called it expedited removal. So this gets back to my initial question in painting on a broader canvas. If that's what Congress really intended to do and really said, even if you're held in violation of law, you're denied habeas review, how can that possibly survive a suspension clause analysis? Your Honor, if there were an alien who would want to do that? No, no. It's not hypothetical. I'm just saying we're not talking about this case in particular. I'm talking about General. If an alien is held in violation of law and alleges that, are you saying there's no remedy here, and if so, then how can that survive a constitutional analysis under the suspension clause? It would depend, Your Honor, on what kind of violation of law the alien is alleging. If the alien is alleging that there was no basis in law to detain the alien because the alien was not removable at all on any ground, and the alien was not somebody at the border seeking admission, but was somebody within the United States and therefore arguably has some due process rights with respect to their immigration status, then perhaps in that kind of case there might be a suspension clause problem. But we don't have that kind of case here, Your Honor. We have a case. And if we were faced with that kind of case, then what would our remedy be? We just have to declare the statute unconstitutional, or do you think there is a permissible construction of the statute that would allow us to reach those questions of law? I'm the ‑‑ we are ‑‑ we have the statute that Congress has enacted, and that statute makes clear that Congress did not want there to be habeas corpus review extending beyond the three narrow categories it has specified, whether somebody is an alien, whether they were in fact order removed, and whether they can prove by preponderance of the evidence that they are a lawful permanent resident or somebody previously admitted as a refugee or asylee. Those are the only categories. Congress hammered home that that's what they really, really meant when they stated that review would be limited to whether an order in fact was issued and whether it relates to the Petitioner in situations where the person is not claiming lawful permanent resident status or refugee or asylee status. And then they said that there shall be no review of whether the person is inadmissible or entitled to any relief from removal. One can picture Congress asking itself, what are the two issues that aliens and expedited removal are most likely going to want to litigate? They're going to want to litigate whether they're removable and whether they can obtain any relief from removal. And Congress covered the territory by specifically saying both of those bases for review are barred. So your answer to my question is the statute is unconstitutional if the circumstances arise in which someone is held in violation of law. That doesn't fit in one of those categories. I don't know, Your Honor, because we don't have that case before us. We only have the case of somebody as to whom the statute is clearly constitutional because she does not contest that the custodian had some authority to detain her because of her unlawful status in the United States. Plus, on top of that, she is a person or was a person who was seeking admission into the United States who had not previously been afforded lawful permanent resident status and, therefore, had no constitutional rights with respect to her application for admission. So what do you make of her count one, her legal claim that the expedited removal proceedings were misapplied to her because they do not apply to someone in her situation, nor did Congress intend them to apply to someone in her situation? She says, look, this statute does not apply to me at all. That's a procedural complaint, Your Honor. She does not. No, she's saying that the statute, I was detained in violation of law because this law does not apply to me. Now, why wouldn't a court have jurisdiction? I'm not saying she wins on the merits because you seem to be arguing more of the merits. Why wouldn't the court have jurisdiction to decide that claim either for her or against her? Well, actually, Your Honor, this question came up in the Brum case in the Fifth  The Fifth Circuit held that the statute, the expedited removal statute was not lawfully applied to her situation, and the Fifth Circuit held that the statute was not intended to allow aliens to litigate whether the statute lawfully applied to them. The only basis for review was whether there was an expedited removal order issued and whether it related to the Petitioner. There was no jurisdiction, the Fifth Circuit acknowledged, over whether the order was lawfully issued against the Petitioner under the expedited removal criteria. Is that your best case from the circuit court, or is there another case? Actually, Your Honor, I have a case from the Ninth Circuit as well called Avendano-Ramirez, and it was decided a few years ago. I believe after St. Cyr. Let me make sure I'm right about that. Yes, Avendano-Ramirez was decided in 2004, and it involved a situation remarkably similar to this one. An alien who had lived in the United States for some 11 years but had done so unlawfully without any lawful immigration status, took a trip abroad to Mexico, I believe, to visit a stick relative, which I believe was the purpose of the trip in this case as well, and on her attempt to return, I think she even made a false claim of some kind, and she was subjected to expedited removal and was removed. The difference is that she later reentered illegally, I believe, and was placed in regular removal proceedings, and in those regular removal proceedings, she sought to collaterally attack the validity of her initial expedited removal order. And the Ninth Circuit held that no such collateral attack was available, but very interestingly, part of the reasoning of the Court's decision was based on the statutory limitation on the scope of review under INA 242e2. They said even apart from the fact that this is only a collateral attack in the context of a later removal proceeding, even under the habeas review criteria that would have existed if this were an initial habeas appeal, this alien is bringing the kind of claim that we can't litigate here. And I believe she was trying to raise a statutory claim that expedited removal didn't apply to her because of some provision in the expedited removal statute that only applies to non-arriving aliens, and she was an arriving alien. But, you know, the interesting thing about that case, though, is that the Court found it had jurisdiction to decide it. I don't believe it did, Your Honor. It did not dismiss for lack of jurisdiction. It denied the petition for review, saying we couldn't reach all of these other issues. I mean, we always have jurisdiction to determine our own jurisdiction. And in that case, the Court took the case. It didn't say, no, you can't come here at all. It considered the merits of all of the arguments. I have to disagree, Your Honor. The Court did not do that. It denied the petition for review, but it did not. Well, when it says petition, we dismiss a petition for review for lack of jurisdiction if we don't have jurisdiction. Well, the alien also raised arguments that didn't relate to the expedited removal order, Your Honor. Remember, this was a petition for review in a subsequent 240 proceeding, and the alien also had arguments about why she was eligible for cancellation of removal now, even apart from her earlier removal order under the expedited removal procedures. And the Court considered the merits of those arguments. So that's why it denied the petition for review rather than dismissing it.  Now, there are many subsequent arguments arising after that order. It said that we are not going to fossick in the details of this alien's prior removal because there are three narrow bases for jurisdiction, and this alien does not come within any of them. She seeks to raise a legal question arguing that she doesn't come within expedited removal, but we do not have the power to reach that question because it doesn't come within the three narrow categories. If we did have the power, we must say, I think they said in dicta, if we did have the power, then we would probably look askance at that question on the merits, because this clearly is an arriving alien, as Ms. Uribe-Reyna is also an arriving alien, by the way. So they did say in dicta that if we were to address the merits, we probably wouldn't find much merit to those claims, but their holding was we do not have jurisdiction to reach that issue because it does not come within the three narrow bases for remove to, for review, excuse me. This alien, they said, Ms. Avendano, was an alien, ordered removed under expedited removal, and did not claim prior lawful permanent resident status or prior admission as a refugee or asylee, and therefore the court said we have to stop there. We can't go any further. And was a suspension clause argument made in that case? The answer is no.  I believe you're correct about that, Your Honor. I believe there was not a suspension clause argument in that case. So the issue that's in front of us today wasn't involved in that case? Well, the statutory issue was certainly involved, but the suspension clause issue was not involved. And I will proceed to the suspension clause issue, but before I do, I would just like to make a brief comment that the arguments under St. Cyr, as Judge Bea points out, are really no longer valid because there has been law enacted since then in the statute that says if you don't get review under 242e2 because you don't come within the limited jurisdiction, then there's no habeas review of any other kind, either. Nothing under 2241. We only have two minutes left. We'd like to hear your position on the suspension. Oh, okay. All right. So thank you, Your Honor. I will proceed to the suspension clause. So since St. Cyr and Clark do not permit the Court to rely on statutory construction given that Congress's clear intent to limit review is plain here, the Court needs to go on to address the suspension clause. First of all, we would argue that there is an adequate and effective alternative means of review in that the Petitioner could have sought relief by seeking adjustment of status or turning herself in for placement in regular removal proceedings at some point before she made her trip to Mexico, and she would have had the opportunity to raise her cancellation of removal claim and to raise her adjustment of status claim in that context. So that would have been one alternative means. Yes, Your Honor. She cannot force the government to place her in removal proceedings. We've litigated that question before. We've had people say, look, I turned myself in and you didn't prosecute me. And the government says, look, we have the decision. It's our own decision. It's within prosecutorial discretion. So she didn't have an elective, the true election to say, okay, come arrest me, and the government would. Now, likely, probably the government would have. But you can't say that she had the election to place herself in removal proceedings, right? That's exclusively the province of the government. I will, yes, acknowledge, Your Honor, that the government makes the ultimate call on whether to place the alien in removal proceedings. Would you also agree that one cannot apply for cancellation of removal proceedings unless one is in removal proceedings? I agree with that as well, Your Honor. So she did not have the election to seek relief for cancellation of removal. So the only argument is that she had the availability of adjustment of status, right? She could have applied for adjustment of status outside of removal proceedings. Yes, that's right, Your Honor. And the fact that she was illegal, how would that have come out? Running out of time here. Illegal aliens can apply for adjustment of status if they, even though they entered illegally, if the petition on their behalf was filed before April 30, 2001. This alien's petition was filed in 1993. She had a visa available as of 1999, so she would have been able to apply for adjustment of status. Now, we'll give you some more time. Go ahead and finish your argument about the suspension clause. I detained you with my question, so I'm not going to punish you on time. Much appreciated, Your Honor. Well, I will proceed right to the suspension clause then. The Supreme Court has never held that nonresident aliens at the border seeking admission and only in order to apply for discretionary relief from removal have an absolute constitutional right to habeas review of whatever question they seek to raise, even where Congress plainly intended to restrict the scope of habeas review to exclude that kind of question. And here, both the nature of the claim, seeking discretionary relief ultimately, and the nature of the claimant, an alien at the border seeking admission with no due process rights regarding her immigration status. Both of those things, the nature of the claim and the nature of the claimant, are unprotected here. Now, just one quick word about the Haikila case. I would just like to mention what the Court said the issue in Haikila was at the very beginning of that opinion. They said the issue was whether the validity of the deportation order may be tested by some procedure other than habeas corpus. That was the issue in Haikila, whether there was APA review available. The Court did not address the scope of habeas corpus jurisdiction. They did not address the scope of judicial review required by the Constitution. They said that only habeas review was available. But they didn't have to address exactly what the scope of the habeas review had to be, because there was a habeas statute that applied. There was the statute of 1867, which was succeeded by 2241 ultimately, which gave the Court's power to address any violation of the Constitution or any treaty or law of the United States. And in Exe Part MacArdle, the Court, the Supreme Court said, this legislation is of the most comprehensive character. It is impossible to widen this jurisdiction. They said it was impossible to widen it, not impossible to narrow it. Kennedy. I'm a little confused. I thought at the beginning, I took a note, the government conceded that there was the right to use habeas review because she was in custody within the United States. Now you're telling us that there's no Supreme Court case extending habeas review to entering aliens. I'm saying that there's no habeas case saying that the suspension clause prohibits Congress from limiting the scope of habeas review. To an entering alien. To an entering alien or to a somebody seeking purely discretionary relief. There is habeas review, but Congress can constitutionally limit the scope of that review. Do you have any cases that say that? I don't think that it has come up, Your Honor. In cases where aliens have litigated. I'm a little bit confused because I thought you said that she had full habeas rights because she was being detained within the United States. No, not full habeas rights, Your Honor. The right to bring a habeas corpus petition under the terms dictated by Congress. That's what you meant. That's what I meant, Your Honor. All right. So now I see it. Yes. But, you know, as we take all the Supreme Court cases starting from the turn of the century forward and you look at them in context, every time Congress has tried to eliminate or restrict habeas review so that violations of law would not be considered, what the Supreme Court has done is to construe the statute otherwise to allow litigation on habeas review of violations of law. They did it, well, you start off with Arab American. After that, you start off with St. Cyr. It goes right on down the line. And the message, I don't think there's a Supreme Court case that has really upheld the position the government's taking, that Congress could really effectively eliminate all habeas, all review, judicial review, including habeas review, of questions of law. Well, again, Your Honor, you've been. The Supreme Court has never done that, has it? It hasn't reached the question, Your Honor, because it has determined, as you've indicated, that the statute could be construed to enable it not to have to reach the question. But in this case, no such construction is possible. And, indeed. So you want us to hit the question directly, then, whether or not this statute violates the suspension clause because it eliminates review of questions of law? I think you might have to. I would prefer not to do that. I understand the preference to avoid reaching constitutional questions, if possible. But it is a clear intent of Congress that's reflected here to limit review to the three questions that are indicated, and even in Clark, which the Petitioner so heavily relies on, the Court said that the canin of avoiding constitutional questions is not a method of adjudicating those questions, and it's not a means of subverting congressional intent. Oh, sure. But the question is, are there serious constitutional questions raised? And if there are, then we have to look at the statute and see if there's a possible construction that would avoid an unconstitutional application. Do you agree with that? I agree with that. And I'm saying that there is no possible construction that would enable review of the specific question that Ms. Uribrena seeks to raise, given Congress's plain intent to foreclose review, not of all habeas, but of that particular issue. And given that we would contend that the scope of review is limited to the writ as it existed in 1789, and under that writ the review was limited to whether there was some basis in law for the executive custodian to detain the Petitioner, and here there is indisputably a basis in law to detain the Petitioner, given that she is admittedly an alien or was an alien illegally present in the United States without any valid immigration documents. Given that there was some lawful basis to detain, the Suspension Clause inquiry is at an end, and therefore, yes, Your Honors, government would contend you do need to reach the Suspension Clause issue here, but if you find that there's no adequate and effective alternative to habeas review here and that, therefore, you do really need to reach the merits of the Suspension Clause issue, you should hold that the congressional restrictions at issue in this case do not violate the Suspension Clause because we do not have here an instance of an alien who claims that she – that there is no legal basis whatever for her detention by immigration authorities. Thank you, Counsel. Thank you, Your Honor. We'll give you five minutes. Thank you, Your Honor. First, the government appears to be suggesting that the Hecula case was dicta. It was not dicta, and in addition, St. Cyr cited Hecula no fewer than five times. St. Cyr twice reiterated the central conclusion of Hecula, which is that during the period before 1952, from 1891 to 1952, the only review available in habeas was that which was required by Constitution – by the Constitution. Further, if we look at the Nishimura-Akiu case, which is the Japanese immigrant case, in that case, the Supreme Court, while not reaching a direct constitutional holding on the Suspension Clause, was well aware of the constitutional dimensions of its decision, and that's because the immigrant in that case, who was an excluded immigrant at the border, specifically argued to the Court that if the 1891 Act was interpreted as vesting exclusive and final authority over exclusion decisions in executive officers, then her constitutional right to test the legality of her detention in habeas would be violated. And the Court's decision in Nishimura-Akiu essentially avoided that question. They didn't directly address the question, but they concluded that the 1891 Act did not restrict her right to test the legality of her exclusion in habeas. Kennedy, what specific remedy would you have this Court give you? We think the statute can be read to allow for review. And I think something that the government pointed to, for example – What remedy do you want? Do you want an order reversing the order of the district court and reinstating the temporary restraining order? We would ask the Court to reverse the district court's jurisdictional decision and conclude that there is – there is jurisdiction under the habeas statute and remand to the district court with instructions that the district court proceed with the case as if Missouri Bay had never been erroneously removed. Second, I'd like to point out that the government seemed to be also suggesting that the scope of habeas in 1789 did not include errors – only included a very narrow set of errors of law. And in St. Cyr at 533 U.S. 302, the Court was clear that in England prior to 1789, in the colonies and in this nation during the formative years of our government, the issuance of the writ was not limited to challenges to the jurisdiction of the custodian, but encompassed detentions based on errors of law, including the erroneous application or interpretation of statutes. Do you think in England, if a warden had stopped a Frenchman coming into a border and sent him back on a boat to France, the Frenchman would have been entitled to habeas corpus in 1750? It's a – it's a difficult question, Your Honor, because the suspension clause history is so muddled. But the evidence that we have is that, yes, the suspension clause does cover that type of situation, and especially when we look at the Hecula cases. And it's not for the purpose of keeping custody of the lad, but to put him back into France. I mean, here, there's a problem. The detention is – the government is saying, we want to hold this person as little as possible. We want to put this person back into Mexico, where she can apply at the nearest consulate for her adjustment of status. We just don't – we don't want to hold her. It's different, isn't it? If the government is violating, for example, the procedures that Congress set out for how that detention should be governed, then there is habeas jurisdiction under the suspension clause. Any error of law. Let me raise a different question. As you may have gathered from my questioning of the government, I'm a little – it's disturbing to me that this – all these issues weren't flushed out in the district court. This was a summary dismissal, jurisdictional dismissal, which I gather was taken without a hearing, right? That's correct. Before a judge. You had the papers. You had the TRO papers. But that was it. Had the government filed an answer in the case or a motion? The government had filed a brief arguing that there was no jurisdiction. But the government hadn't asked the court to dissolve the TRO, and we hadn't had an opportunity to brief the jurisdictional issues. And the district court never even addressed the suspension clause issues in the case. There are – there are some questions on some of the various counts that it seems to me would, at least for my purposes, would be better if flushed out to see what both sides' position were. Because there are certain – I guess my view depends on – you can say violation of law, but that can have a very broad or a very narrow meaning. And some of the – some of the allegations of the compliance seem to raise more pure questions of law, and some maybe mixed. Is there some merit of sending it back down to the district court for full briefing and then a more full opinion on this? I don't believe so, Your Honor. And that's because it's – it would be improper for the district court to exercise jurisdiction over the merits of the case if the district court had not assured itself that it, in fact, had jurisdiction. So the first question in the case is jurisdiction. And if the court doesn't have jurisdiction – Well, I guess what I was saying is that the court reached its jurisdictional decision without full briefing or hearing an argument. Of the jurisdictional issues? Yes. So you're asking whether there would be merit in sending it back to brief the jurisdictional issues again or – Have a full hearing on it. I mean, the court's sui spondi dismissed this whole complaint, right? I think that without guidance from this court on the jurisdictional issue, the – it appears to me that the district court would simply reach the same decision, because the district court believes that the statute simply does not allow for jurisdiction. Well, perhaps. But we'd be – on appeal, we'd be faced with a better record. A better record on jurisdiction? Yes. On the factual development on jurisdiction, which your basis is. I mean, you complain that the TRO is dissolved without notice and hearing. Are you abandoning that claim? No, we're not abandoning that claim. Isn't that what you're arguing essentially here, is that you didn't have notice and hearing to be able to oppose the dismissal of the suit? We're arguing on the TRO point that because of the way the TRO was dissolved, we didn't have an adequate opportunity to obtain – to apply to the district court and to the court of appeals for a stay of removal. So as a – You're not saying that there's any factual dispute before the district court, are you? That would aid this – the district court in resolving jurisdiction? Yes. No, Your Honor. Well, let me ask you this question. If we – if you succeeded on your claim that the district court violated the rules of civil procedure because it dissolved the TRO and dismissed without notice and hearing, where does that get you? I don't think that would matter unless this court determined that the district court did have jurisdiction. What it would get us if the court determined that the district court had jurisdiction is that it would – it would – we would ask the court to make clear to the district court that the rest of the case, the merits of the case, have to be proceeded with as if Miserere had not been removed. If I may, there's another point that I would like to make, that the government discussed the Broome case and the Avendano-Ramirez case, and I just wanted to point out, first of all, the issue in Broome was inadmissibility. And so that's a harder case than the issue here because we don't make any inadmissibility challenges. And there's a specific provision of E-5 which addresses inadmissibility, and so it's a harder case in that situation. And as the court pointed out, Broome never considered the suspension clause issues. Second, there is a case, the American Arab Anti-Discrimination Committee case in Michigan. In that case, the specific question there was very similar to the question here, which is whether the petitioners were arriving aliens. And the district court in that case concluded that there was jurisdiction to review that question, and the court did review the question and concluded that in that particular case, the petitioners were not arriving aliens and should not have been placed in expedited removal. Breyer. That's just a district court case, though, right? It's a district court case.  How do you distinguish Avendano-Ramirez? Although the court did reach the merits in that case, it did use a lot of jurisdictional language in analyzing the prior removals. I think the key point in Avendano-Ramirez was that it was a petition for review, and the question was whether on a petition for review the court could address her claims going to the validity of her expedited removal order. The court – it was not a habeas case. The court had absolutely no – the court did not have to reach the question of the scope of the habeas provisions. And all the court said in Avendano-Ramirez about the scope of the habeas petitions was that the Congress has limited habeas corpus review to a rather narrow group of questions. And then the court cited the habeas provisions. But I believe the government misspoke when it said that in Avendano the Ninth Circuit had held that there was no jurisdiction because her claims did not fit into the three narrow categories. The three narrow categories in habeas in 1252e2 and e5 were not at issue before the court in Avendano-Ramirez. And lastly, the court never addressed any suspension clause issues that might have obtained if there were absolutely no avenue for review. To conclude, we believe that the statute can be read to provide for review. Judge Hawkins did it in his dissent in Lee v. Eddy. The district court in the American Arab case did. And when you look at 1252e5 and the two-sentence structure, you'd see that there's no need for Congress to specifically exempt review over actual inadmissibility and entitlement to the relief. If it was so obvious from the broad preclusiveness of the first sentence in 1252e5, there's no review of those questions. So what we think this Court should do is construe the statute, look very carefully at the statute, and construe the statute to allow review of the degree of review required by the suspension clause. Kennedy. But you want a degree of review set out in 1252d for petitions for review. In other words, legal questions and constitutional claims. Yes, Your Honor. Thank you, counsel. Thank you. Please just sort of resubmit it. I want to thank both of you for your arguments. It's obviously a very interesting and complex case, and both of your arguments today have helped out the Court considerably. Thank you very much, and we will be at recess.
judges: Siler, Thomas, Bea